IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Larry Canady,                         :

          Plaintiff,                  :

     v.                               :     Case No. 2:14-cv-303

Doctor Eddy, et al.,                  :     JUDGE JAMES L. GRAHAM
                                            Magistrate Judge Kemp
          Defendants.                 :

                   REPORT AND RECOMMENDATION
                          AND ORDER

     This is a pro se prisoner civil rights action brought by
Larry Canady, an inmate currently housed in the Pickaway
Correctional Institution.  This matter is before the Court on two
motions.  Specifically, Defendants Eddy, Saul, Swackhammer,
Aduse, and Justice have filed a motion for judgment on the
pleadings (Doc. 27), and Mr. Canady has filed a motion to compel
(Doc. 33).  Both motions have been briefed fully and are now ripe
for disposition.  For the reasons set forth below, the Court will
recommend that the motion for judgment on the pleadings be
granted and will deny the motion to compel.

                      I. Background

     In this case, Mr. Canady filed a complaint on April 14,
2014, alleging that his due process rights were violated because
the prison's rules infraction board entered judgment against him
without permitting him to participate in the proceedings.  Mr.
Canady also alleges denial of medical care in violation of the
Eighth Amendment to the United States Constitution.  Defendants
Eddy, Saul, Swackhammer, Aduse, and Justice filed an answer on
May 29, 2014.

     Mr. Canady moved for a temporary restraining order and
preliminary injunction on June 30, 2014.  In a Report and
Recommendation and Order issued on September 4, 2014, the Court

recommended that the motion for a temporary restraining order and preliminary injunction be denied.  The Court adopted the Report and Recommendation over Mr. Canady's objection on October 3, 2014 and thus denied Mr. Canady's motion.

On November 19, 2014, Mr. Canady filed a motion for leave to file an amended complaint.  Defendants did not file a response to the motion.  On January 13, 2015, the Court found that the unopposed motion set forth good cause.  Consequently, the Court granted the motion and the Clerk filed the amended complaint.  It does not appear that the amended complaint is actually an amended complaint in that it is intended to supercede the original complaint in this case.  Rather, Mr. Canady has captioned it as a "supplemental complaint," and it merely adds to the information in the original complaint.  All of the allegations in the supplemental complaint pertain to Defendant Rebecca (Becky) Krauss, who has not been served.  That failure has been addressed in a separate order.  See Doc. 36.

Mr. Canady's allegations all arise from his various medical problems, which include:  "Primery [sic] Open Angle Glaucoma (POAG)[,] Diabetes Mellitus (DM)[,] Benign Prostate Hypertrophy with Urin [sic] Retention (BPH)[,] Hypertension (HTN)[,] Chronic Kidney Disease (CKD)[,] [and] Polycystic Kidney Disease (PKD)." (Doc. 3 at ¶9).  Mr. Canady also "has a Hydrocele in his testicals [sic]." Id.  Mr. Canady's allegations can be broken down into three categories: (1) allegations which relate to his pain medication; (2) allegations which relate to his dialysis; and (3) allegations which relate to his eye drops.  As set forth below, a number of Mr. Canady's allegations do not pertain to named defendants in this case.

A. Mr. Canady's Pain Medication

There are three sets of allegations relating to Mr. Canady's pain medication.  The first set of allegations relates to a

charge of medication misuse brought against him.  The second set
of allegations relates to whether Mr. Canady had a "no standing
order" which allowed him to sit, rather than stand in line, while
waiting for his medication to be dispensed.  Finally, the third
set of allegations arises from Mr. Canady's treatment by certain
doctors, only some of whom are defendants in this action.

The first set of allegations begins with Mr. Canady's
assertion that the nurse who administers his time-release pain
medication crushes it, which interferes with its time-release
properties.  Mr. Canady filed a complaint stating that the
institution's policy of crushing pain medication is improper.
Mr. Canady alleges that Officer Via, who is not a party to this
lawsuit, retaliated against him for filing the complaint by
asking him to put his finger into his mouth to prove that he had
taken his medication.  Mr. Canady refused to do so, and Officer
Via then told the nurse to discontinue Mr. Canady's medication.
Mr. Canady alleges that Officer Via "wrote a conduct report (rule
42 Misuses of Authorized Medication)," which included a statement
that he discovered pills in Mr. Canady's pocket.  <u>Id</u>. at ¶13.

Mr. Canady attached the conduct report to the complaint.
The supporting facts describe the incident as follows:

> Sir be advised on the above date and time, I officer Via
> was working the FHC pill call when I seen inmate Canady
> 2110413 get his meds from the nurse in the window.  As he
> leaned over to get a drink of water I seen that this
> inmate dumped all the meds, [sic] in the cup into his
> hand and put them into his right coat pocket.  This
> inmate then continoued [sic] to get a drink and act as if
> he had taken his meds but when I shook him down I found
> them in his pocket.  I then checked with the nurse to see
> what type of meds they were and she stated that they were
> Hydralazine, Neuroutin 600 mg, Ultram 100 mg and Imuran.

<u>Id</u>., Ex. 4.  The report was given to the rules infraction board.

The notification of action of the rules infraction board,
signed by Defendant Sergeant Justice, reflects that Mr. Canady

3

received a thirty-day commissary restriction, with $12.00 for hygiene items only, and a thirty-day package restriction. <u>Id</u>. at Ex. 5. Mr. Canady claims that he was improperly denied the right to attend the rules infraction board hearing and to call witnesses on his behalf. Thereafter, Mr. Canady filed an informal complaint alleging that he was denied due process with respect to the rules infraction board proceeding. <u>Id</u>. at Ex. 6. The response to Mr. Canady's informal complaint indicated that he could contest the finding of medication misuse under the rules infraction board appeal procedure.

Turning to the second set of allegations, Mr. Canady asserts that, on a different day, when the line to receive medication was long, he sat down and waited for his turn at the window due to a "[n]o standing order...." <u>Id</u>. at ¶16. Mr. Canady alleges that Officer Thompson, who is not a defendant in this lawsuit, prevented him from getting his medication because he was sitting down and ordered him to wait until everyone else had received their medication before getting his medication at the window. According to Mr. Canady, "[he] told [Officer Thompson] that [he] had a no standing order and [Officer Thompson] refuse [sic] to accept this and went back to the nurses station. [Officer Thompson] returned stating that [his] order had been cancelled." <u>Id</u>. at ¶17.

Mr. Canady filed an informal complaint concerning Officer Thompson's conduct. <u>Id</u>. at Ex. 8. Specifically, Mr. Canady alleged that Officer Thompson acted inappropriately by accessing his medical record and preventing him from treatment. The response to Mr. Canady's informal complaint states that Mr. Canady does not have a no standing order and that Officer Thompson did not have access to his medical record.

Mr. Canady also filed a grievance concerning Officer Thompson's conduct. Mr. Canady attached the disposition of

4

grievance to the complaint, which provides in part:

> To ensure order and the safety and security of staff and inmates, Officer Thompson can inquire if you have a "No Standing" order.  The inspector cannot diagnose any medical condition nor recommend the appropriate course of treatment.  With the assistant [sic] of a medical professional I did review your medical chart; I did not find a "No Standing" order.

Id. at Ex. 10.  Mr. Canady appealed the disposition of grievance to the Chief Inspector, who affirmed the decision.  Id. at Ex. 12.

    In the third set of allegations relating to Mr. Canady's pain medication, Mr. Canady describes seeing Dr. Turich, who is not a defendant in this action.  Mr. Canady alleges that Dr. Turich refused to address his pain and "stated [his] meds were on crush therefor [sic] they were discontinued now." Id. at ¶21. Dr. Canady further alleges that Dr. Turich ordered an ultrasound which was never performed.  Next, Mr. Canady alleges that he was seen by Defendant Dr. Aduse.  According to Mr. Canady, Dr. Aduse "did not discuss any of my medical issues, chronic care or not, he just wanted to get me out of his office and get to the next man.  He also stated he could not find any such odred [sic] (No, Standing) in my file." Id. at ¶22.  Mr. Canady's final claims relating to pain medication are that: Defendant Dr. Saul, who is not a renal specialist, improperly ordered that his medical conditions could be treated with Ibuprofen; Dr. Saul refused him pain medication; and Dr. Saul failed to take appropriate treatment when Mr. Canady suffered from a urinary tract infection.

## B. Mr. Canady's Dialysis

    Mr. Canady next sets forth allegations pertaining to his dialysis.  According to Mr. Canady, his appointment for dialysis is at 7:00 a.m. and, if he is late for that appointment, the nurses reduce his treatment time for dialysis by thirty minutes.

Mr. Canady alleges that his time was reduced by thirty minutes on
at least three occasions.

Mr. Canady filed an informal complaint about his time being
reduced.  Mr. Canady alleges that Mr. Swackhammer wrote the
response to his complaint, which states that Mr. Canady was given
a pass to be in dialysis by 7:00 a.m. and told verbally and in
writing that he must be in his seat no later than 7:30 a.m. or
his time will be cut.  Id. at Ex. 16.  The response adds, "this
is a prison + you will follow the rules of this institution no
different than on the street."  Id.  Mr. Canady complains that
reducing his time on dialysis interferes with the treatment plan
prescribed by his physician.

C. Mr. Canady's Eye Drops

Mr. Canady also sets forth claims related to his treatment
for glaucoma.  Mr. Canady alleges that the prison refused to give
him Lumigan, the eye drops prescribed to him by a doctor at the
OSU Ophthalmology Clinic to reduce the pressure in his eyes.  He
acknowledges that he did receive eye drops, but he alleges that
Mr. Swackhammer improperly allowed different eye drops to be
substituted for Lumigan.  Mr. Canady also complains that
transportation was not made for him to return to the OSU
Ophthalmology Clinic on several occasions.

After filing complaints, Mr. Canady returned to the clinic
in January 2014.  Mr. Canady states that "[a]t that visit the
specialist once again order [sic] the new drops, Only [sic] this
time made of a note of stateing [sic] that if I did not get the
new drops I may suffer a loss of vision that cannot be replaced."
Id. at ¶39.  Mr. Canady asserts that a recommendation was made to
the central office to order the new medication, because the
institution did not keep the medication in stock.  Although not
entirely clear, Mr. Canady seems to allege that the institution
again failed to order Lumigan for him.

6

Mr. Canady also sets forth allegations concerning how his eye drops were administered.  Specifically, Mr. Canady complains that Chief Medical Director Dr. Eddy interfered with his treatment by having him come to the infirmary three times per day to have a nurse watch him put the drops in his eyes.  Mr. Canady also alleges that the eye drops are not being renewed properly.

D. <u>Mr. Canady's Claims For Relief</u>

Based on the foregoing, Mr. Canady sets forth the following "claims of relief":

> The action of defendant Justice, finding the plaintiff guilty on rule 42, with no evidence to support the charge, and refusing to let the plaintiff call any witnesses in his behalf, and providing an [sic] disposition of the charge denied the plaintiff the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

> The failure of defendant Dr. Eddy, to provide the plaintiff with his prescribed eye drops in a timely fashion constitutes the tort of negligence under the law of Ohio.  Repeated examples of negligence amounts to deliberate indifference in violation of the Eighth Amendment to the United States Constitution.

> The action of defendants Dr. Saul and Dr. Aduse, refusal to provide plaintiff with pain medication for his CKD and PKD condition, alone with the numberous [sic] Urinary Track [sic] Infection, he were suffering from, and continues to contract, violates plaintiff's rights under the Eighth Amendment to the United States Constitution.

> The action of defendant Jackie (Last Name Unknown) failure to arrange for transportation to his outside follow-up appointments on numerous occasions to the Opthalmology [sic] Clinic violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

> The action of defendant Swackhammer, failure to take action in providing plaintiff with his prescribed eye medication in atimely [sic] fashion constitutes the tort of negligence under the law of Ohio.  And repeated

examples of negligence amounts to deliberate indifference
in violation of the Eighth Amendment to the United States
Constitution and his action having the nurses cut my run
time on the dialysis down to three hour [sic], down fron
[sic] three and an a [sic] half hours as prescribed
violates my rights under the Eighth Amendment to the
Unites States Constitution.

<u>Id</u>. at ¶¶45-49.

## II. <u>Motion for Judgment on the Pleadings</u>

A motion for judgment on the pleadings filed under Fed. R.
Civ. P. 12(c) attacks the sufficiency of the pleadings and is
evaluated under the same standard as a motion to dismiss.
<u>Amersbach v. City of Cleveland</u>, 598 F.2d 1033, 1038 (6th Cir.
1979). In ruling upon such a motion, the Court must accept as
true all well-pleaded material allegations of the pleadings of
the opposing party, and the motion may be granted only if the
moving party is nevertheless clearly entitled to judgment.
<u>Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.</u>, 479 F.2d 478, 480 (6th Cir. 1973). The same rules which
apply to judging the sufficiency of the pleadings apply to a Rule
12(c) motion as to a motion filed under Rule 12(b)(6); that is,
the Court must separate factual allegations from legal
conclusions, and may consider as true only those factual
allegations which meet a threshold test for plausibility. <u>See,
e.g., Tucker v. Middleburg-Legacy Place, LLC</u>, 539 F.3d 545 (6th
Cir. 2008), citing, <u>inter alia</u>, <u>Bell Atlantic Corp. v. Twombly</u>,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007). Further,
because Mr. Canady is without counsel, his complaint must be
liberally construed. <u>See Erickson v. Pardus</u>, 551 U.S. 89, 94
(2007). It is with these standards in mind that the motion for
judgment on the pleadings must be decided.

The motion for judgment on the pleadings was filed on behalf
of Defendants Eddy, Saul, Swackhammer, Aduse, and Justice, the
only named Defendants that have been properly served in this

8

case. (Doc. 27). Because there are no allegations against these Defendants in the supplement complaint, the motion only addresses the allegations in the original complaint. In the motion, Defendants make the following arguments: (1) Dr. Aduse did not violate Mr. Canady's rights because he is "not entitled to a particular conversation with a doctor nor to have his medication provided in any particular form," Doc. 27 at 6; (2) Mr. Canady alleges a mere difference of opinion with regard to his pain medication; (3) Mr. Canady's claims regarding dialysis do not rise to constitutional proportions; (4) Mr. Canady's eye drops are not a matter of constitutional concern; and (5) Mr. Canady did not experience constitutional deprivations regarding his rules infraction board hearing. Defendants also claim that Mr. Canady's state law claims must be dismissed.

In his opposing memorandum, Mr. Canady claims that the motion is premature due to that fact that Rebecca Krause has not been served and because there is an outstanding discovery issue. (Doc. 28 at 2). Mr. Canady also filed an affidavit describing the outstanding discovery issue. Specifically, Mr. Canady states the following:

> The defendants has [sic] prematurely filed for judgment knowing that there is a need for discovery. Plaintiff has not had full disclosure of the material he requested from the defendants, due to the way the files was [sic] presented and the one hour limit placed on inspecting the material.
>
> The filed [sic] that were given to the plaintiff to inspect were not the same files used in the institution infrimary [sic] or the dialysis dept. There were no consultation sheets, treatment records or anything from the outside doctors.
>
> Plaintiff needs, any and all policies or instructions from the Ohio State Ophthalmology Clinic, including all consultations dating back two years.
>
> Plaintiff has been denied, any documents from Dr,

> Eddy [sic] concerning the medication called Lumigan, and any policies or directive created by Dr. Eddy reflecting how to administer Plaintiff's eye drops.
>
> Any and all documents created canceling and/or denieing [sic] plaintiff's request to return to the eye clinic at Ohio State University by Dr. Eddy and/or Central Office, names of indiviuals [sic], title and documents created durring [sic] the process, that state once a year is the new policie [sic].
>
> Produce dialysis flow sheets, Hemodialysis treatment records, and monthly records by the treating physicians from the rena clinis [sic].

(Doc. 29 at ¶¶4-9). In reply, Defendants assert that the motion does not address the claims against Ms. Krause. Defendants also argue that Mr. Canady's affidavit includes new discovery requests. Defendants claim that Mr. Canady is unable to seek new discovery because the time for discovery has ended. They also point out that, to the extent that Mr. Canady may have had objections to their discovery responses, Mr. Canady did not raise those objections prior to the close of discovery or file a timely motion to compel. Defendants also state that documents from doctors outside of the prison facility are not in their custody or control, and it was up to Mr. Canady to seek that information directly from those doctors. In any event, Defendants argue that:

> Plaintiff's need for discovery is irrelevant to Defendants' Motion. Defendants argue that, even with the facts alleged in Plaintiff's Complaint, he fails to state a claim upon which relief can be granted. Defendants argue that Plaintiff's Complaint does not sufficiently allege violations of the Constitution, and thus no facts developed in discovery would rescue Plaintiff's Complaint from dismissal.

(Doc. 30 at 2). As to the merits of Mr. Canady's claims, Defendants reiterate arguments set forth in their motion for judgment on the pleadings.

10

Mr. Canady filed a sur-reply without leave of Court, indicating that he was confused about whether Defendants' motion was a motion for summary judgment, as opposed to a motion for judgment on the pleadings. He also states that he did not understand the discovery process and that he was unaware that he "wouldn't talk to the court before discovery was closed." (Doc. 31 at 1). Mr. Canady then states that he does not "wish to waste time or money on the claims that has [sic] been corrected by the defendants," and appears to voluntarily dismiss some of his claims. Specifically, Mr. Canady alleges that he has received all of the paperwork from the rules infraction board, and "[t]his issue are [sic] no longer need [sic] to be litigated." Id. at 3. He also states that he is receiving adequate treatment for his recurring urinary tract infections, "making this claim also moot as far as [he] can see." Id. Mr. Canady further states that he now realizes that it was Rebecca Krause, not Mr. Swackhammer as he originally alleged, who instituted the policy of reducing dialysis treatment based on tardiness. He explains that the procedures have been changed in the dialysis department since Mr. Swackhammer's departure from that department, and the changes help to prevent patients from being late. Mr. Canady states, "as long as I no longer have to get my time cut, I feel with a word to the official in the dialysis dept. that cutting time is not to be done, I am satisfide [sic] with the new change!" Id. at 4. Mr. Canady also states that having his eye drops administered by the nurse or the nurse watching him administer the eye drops is "no longer a concern" because "the drops are back in his control." Thus, Mr. Canady states "[t]his issue is moot also." Id. at 7. Mr. Canady also reiterates the facts as alleged in the complaint and adds new facts pertaining to his remaining claims.

Again without leave of Court, Mr. Canady filed a "brief statement of his claims." (Doc. 32). The statement sets forth

11

the following claims:

> Plaintiff argues that defendants refuse to provides [sic] him with the prescribed medication by hia [sic] treating physician.

> Plaintiff also argues that defendants has [sic] not returned him to the clinic as order [sic] by his treating physician.

> Plaintiff also argues that the defendants crushes [sic] pain medication against the advice of the manufacture [sic], and this crushing change [sic] the reaction of the medication [sic] lasting affect [sic].

> Plaintiff argues that the policy of Dr. Eddy, [sic] to only send me to see the specialist once a year is contrary to what is needed and requested by the specialist. At lease [sic] twice a year are the lease [sic] for visits to the clinic, more often if the paient [sic] condition aer [sic] more serious as my condition[.]

Id. at ¶¶2-5. Plaintiff adds that "monetary damages are not warranted in this case, [o]nly orders to provide plaintiff with prescribed medication, and make transportation available to an outside specialist as requested, and to discontenue [sic] crushing the pain medication." Id. at ¶6.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). In Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw

that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment os not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

In this case, it appears that the remaining allegations Mr. Canady wishes to pursue in support of his claims are that his pain medication is administered improperly in that it is crushed, he is not provided with the proper eye drops, and he is not permitted to return to the Ohio State Ophthalmology Clinic to see a specialist as frequently as he should.  Even accepting these allegations as true, they do not amount to an Eighth Amendment violation.

In the motion for judgment on the pleadings, Defendants argue that:

> Plaintiff's concerns regarding Dr. Aduse appear to be intertwined with Plaintiff's medication being on crush orders.  As mentioned above, he does not allege any improper purpose for his medication to be crushed, nor does he allege he suffered any injury as a result. Plaintiff simply claims that staff is not allowed to issue a blanket order to crush inmates' pain medication.

(Doc. 27 at 7).  According to Defendants, because Mr. Canady "does not allege any injury or nefarious purpose with regard to his pain meds being crushed, and [because] he was treated the

13

same as all other inmates, he has not suffered a constitutional violation." Id. at 8.

This Court agrees. In order to state a claim for an Eighth Amendment violation, Mr. Canady must allege that he suffered harm as the result of his pain medication being crushed. See Turner v. Sidorowicz, 2014 WL 641454, at *9 (S.D.N.Y. Feb. 18, 2014), citing Black v. Farago, 2008 WL 4793712, at *4 (N.D.N.Y. Oct. 30, 2008). In his complaint, Mr. Canady alleges that: he complained that his medication was not to be crushed because it has time-release properties (Doc. 3 at ¶10); he complained that there was a blanket order to crush all pain medication, Id. at ¶¶10, 21; and the "record is silent on [his] pain medication being on crush orders," Id. at ¶21. Thus, Mr. Canady does not allege that he suffered harm as a result of his pain medication being crushed. Absent such an allegation, Mr. Canady is unable to set forth an Eighth Amendment claim on this basis.

Although not entirely clear, it appears that Mr. Canady's claim that Defendants refuse to provide him with the prescribed medication by his treating physician pertains to his eye drops. In their motion for judgment on the pleadings, Defendants state that "[t]hat [they] do not order the drops Plaintiff requests (or even those suggested by outside physicians) is of no constitutional significance." (Doc. 27 at 11). In ruling on Mr. Canady's motion for a preliminary injunction, this Court addressed Mr. Canady's argument that the prison doctor improperly provided him with eye drops other than Lumigan, which were the eye drops prescribed to him by the specialist. In so doing, this Court observed that "[c]hoosing one doctor-supported treatment regimen over another doctor-supported treatment regimen does not amount to deliberate indifference." Mitchell v. Hininger, 553 Fed. Appx. 602, 606 (6th Cir. 2014). This Court further noted that "a prison doctor who relies on his medical judgment to

14

modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference." Williams v. Smith, 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009).  The pleadings reflect that Mr. Canady is indeed being treated for his glaucoma, but he is not being treated with the medication that he would prefer.  This claim does not rise to the level of deliberate indifference to Mr. Canady's serious medical needs.  See Abdul-Wadwood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996) (finding that inmate's disagreement with "selection of medicine and therapy falls well short of demonstrating deliberate indifference to a serious medical need").  Consequently, Mr. Canady does not state an Eighth Amendment claim on this basis.

Finally, the Court briefly examines Mr. Canady's claim that he is not permitted to return to the Ohio State Ophthalmology Clinic to see a specialist as frequently as he should.  In the complaint, Mr. Canady brings this claim against Defendant Nurse Jackie, who has not been served in this case.  Thus, Defendants do not address this claim in the motion for judgment on the pleadings, and the claim is not properly before the Court at this time.

To the extent that Mr. Canady attempts to set forth a state law claim of negligence, Defendants argue that is "not actionable in this court, as he does not allege that the Ohio Court of Claims has already determined that immunity does not apply." (Doc. 27 at 14).  Under O.R.C. §9.86, no state law claims may be maintained against state officials unless and until it has been determined that those officials acted manifestly outside the scope of their employment, and that determination cannot be made by a federal court, but is reserved to the Ohio Court of Claims under O.R.C. §2743.02(F).  Because the law is clear that Mr. Canady cannot pursue state law claims against Defendants absent a

decision from the Court of Claims under §2743.02(F), the Court
will recommend dismissal of the state law claims.  Based on the
foregoing, the Court will recommend that the motion for judgment
on the pleadings be granted.  (Doc. 27).  Further, because the
Court will recommend that the motion for judgment on the
pleadings be granted, Mr. Canady's motion to compel will be
denied as moot. (Doc. 33).

### III. <u>Conclusion</u>

Based upon the foregoing, the Court recommends that the
motion for judgment on the pleadings be granted.  (Doc. 27).  The
motion to compel is denied as moot.  (Doc. 33).

### IV. <u>Procedure on Objections</u>

#### <u>Procedure on Objections to Report and Recommendation</u>

If any party objects to this Report and Recommendation, that
party may, within fourteen days of the date of this Report, file
and serve on all parties written objections to those specific
proposed findings or recommendations to which objection is made,
together with supporting authority for the objection(s).  A judge
of this Court shall make a de novo determination of those
portions of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object
to the Report and Recommendation will result in a waiver of the
right to have the district judge review the Report and
Recommendation de novo, and also operates as a waiver of the
right to appeal the decision of the District Court adopting the
Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140
(1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

Procedure on Objections to Order

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/Terence P. Kemp
United States Magistrate Judge